# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EDWIN SEVRENCE,  )
   )  3:08-cv-00518-LRH-VPC
    Plaintiff,  )
   )
  v.  )  **REPORT AND RECOMMENDATION**
   )  **OF U.S. MAGISTRATE JUDGE**
NDOC, *et al.*,  )
   )
    Defendants.  )  November 16, 2010
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#35).[1] Plaintiff opposed (#42) and subsequently, with the court's permission, filed an amended opposition (#46).[2] Defendants replied (#48).[3] The court has thoroughly reviewed the record and the motion and recommends that defendants' motion for summary judgment (#35) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Edwin Sevrence ("plaintiff") is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#5, p. 1). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment during his incarceration at

---

[1] Refers to the court's docket numbers.

[2] The court construes plaintiff's amended opposition as a supplement to plaintiff's original opposition.

[3] Plaintiff filed an additional motion styled, "Judicial Notice of False and Fraudulent Information for the Sole Purpose of Defrauding the Court" (#49). Upon review, the court notes that the document appears to oppose defendants' reply brief. Federal Rule of Civil Procedure 54 outlines timing for summary judgment motions, responses, and replies. Plaintiff did not request the court's leave to file an additional opposition following completion of the briefing on this matter; therefore, the court strikes the filing (#49). The court admonishes plaintiff to refrain from submitting excessive or duplicative briefing outside of the scope of permissible court filings noted in the Federal Rules of Civil Procedure.

1  Lovelock Correctional Center ("LCC") and NNCC. *Id.* Plaintiff complains that defendants were
2  deliberately indifferent to a growth in his left testicle and the related pain he experienced due to the
3  ailment. *Id.* at 4. Plaintiff names the following persons as defendants in both their official and
4  individual capacities: Dr. John Scott, LCC Senior Physician; Dr. Karen Gedney, NNCC Senior
5  Physician; and Dr. Robert Bannister, NDOC Medical Director.[4] *Id.*

6  Defendants' motion requests that the court grant summary judgment on plaintiff's Eighth
7  Amendment claim, dismiss defendants in their official capacities from this action, and grant
8  summary judgment in favor of defendant Bannister (#35). The gravamen of plaintiff's complaint
9  is that his condition "was causing him a great deal of pain and [defendants] flat out refused to treat
10 him or let him see a specialist to determine what should be done" (#42, p. 4). Plaintiff summarizes
11 his issues by stating: "The defendants believe that seeing plaintiff twice in 2 months and coming up
12 with two (2) totally different diagnoses and refusing to treat either one is proof that they were not
13 indifferent. The fact that they both had different diagnoses should have told them to send me to a
14 urological specialist." *Id.* at 5. In plaintiff's opinion, "[a]ny layperson would know that if two
15 doctors cannot determine what is wrong with a patient and agree with a determination then the
16 patient should be able to see a specialist" (#46, p. 2).

17 The following facts are undisputed. In 2004, plaintiff was diagnosed with a cyst in his left
18 testicle (#35, p. 2). On June 2, 2008, defendant Scott examined plaintiff for several medical issues
19 and conducted a physical examination of plaintiff's left testicle. *Id.* at 3. Based on this examination,
20 defendant Scott determined that plaintiff displayed symptoms of a hydrocele on his left testicle.[5] *Id.*
21 On July 1, 2008, defendant Gedney examined plaintiff to investigate a variety of medical issues. *Id.*

---

[4] Plaintiff also named NDOC as a defendant, but the court dismissed the claims against NDOC upon screening the complaint pursuant to 28 U.S.C. § 1915A (#4).

[5] Defendants state that "a hydrocele is a fluid-filled sac surrounding a testicle that results in swelling of the scrotum. *Id.* at 3 n.2. Defendants do not provide a citation for this proposition. Plaintiff believes this definition is incorrect and states that a "[h]ydrocele refers to a body cavity or the scrotum filling with fluid," according to *The American Heritage Dictionary of the English Language* (#42, p. 9). The court does not see a meaningful distinction between these two definitions, as both refer to swelling of the scrotum attributable to accumulation of fluid in the testicles.

2

1   Defendant Gedney examined plaintiff's left testicle and determined that he had an epididymal cyst.[6]
2   *Id.* Based on defendant Gedney's assessment of plaintiff's left testicle, she recommended no
3   treatment. *Id.* at 4. On July 30, 2008, defendant Scott again examined plaintiff for pain in his left
4   lower quadrant area and back. *Id.* Defendants claim this visit included another examination of
5   plaintiff's left testicle and support this assertion with medical records from the visit, which include
6   notes regarding plaintiff's left testicle (#36-2, p. 4). Plaintiff states that he did not see defendant
7   Scott on July 30, 2008, to address his testicular cyst (#42, p. 3). Following this examination,
8   defendant Scott prescribed three Percogesic tablets for pain to be taken twice daily (#35, p. 4).
9   Defendants state that defendant Scott gave plaintiff the prescription despite the fact that plaintiff had
10  not been "observed to be in pain while on the LCC yard." *Id.* Plaintiff claims the medication was
11  not intended to treat pain from his testicle, but he does not offer an alternate conclusion (#42, p. 3).
12       On July 21, 2008, plaintiff started the NDOC grievance process regarding alleged lack of
13  treatment for his left testicle. (#35, p. 5). On August, 15, 2008, defendant Bannister responded to
14  plaintiff's second level grievance. *Id.* Plaintiff saw defendant Gedney again on October 6, 2008,
15  but did not complain of pain in his left testicle (#35, p. 4). During the course of plaintiff's
16  incarceration, NDOC staff provided medical attention for plaintiff's numerous physical and
17  psychological issues, including "loss of vision, loss of hearing, headaches, chronic constipation,
18  abdomen pain, chronic right knee pain, and chronic right hip pain. *Id.* at 4-5.
19       The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the
20  plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the
21  benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.
22  1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).
23  ///
24  ///
25

---

26  [6] Both plaintiff and defendants provide definitions for an epididymal cyst, which is also
27  referred to as a spermatocele. According to WebMD, it is a "sperm-filled cyst in the long, tightly coiled tube that lies above and behind each testicle" (#42, p. 9). The Mayo Clinic goes on to state that a spermatocele
28  is "generally painless and noncancerous . . . common[ly] affecting as many as three in ten American men [and] pain may be treated with over-the-counter pain medication or surgery" (#35, p. 3 n.3).

3

## II.  DISCUSSION & ANALYSIS

**A.  Discussion**

    **1.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.  Analysis**

Plaintiff brings suit against defendants in their official and individual capacities and alleges that prohibiting him from consulting with a urologist, provision of two different diagnoses, and

4

failure to address pain associated with a cyst in his left testicle constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment (#5).  Defendants claim that plaintiff's cyst is not a serious medical need and that defendants did not act with deliberate indifference when they provided repeated examinations of plaintiff's left testicle (#35, p. 6-9). Further, defendants state that they should be entitled to qualified immunity, that the suit against defendants in their official capacities should be dismissed, and that summary judgment should be granted in favor of defendant Bannister because he did not personally participate in plaintiff's medical care.  *Id.* at 10-12.

### 1.   Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care arises under the Eighth Amendment.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To prevail on an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard – that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard – deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).  A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical need.  *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  The requisite state of mind lies "somewhere between the poles of negligence

at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Moreover, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *accord McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

Further, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner can establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Williams v. Vincent*, 508 F.2d 541, 543-44 (2d Cir. 1974) (holding that inmate stated a claim for deliberate indifference where prison medical staff threw away the inmate's severed ear, told the inmate that 'he did not need [it],' and made no effort to reattach it")).

Here, defendants' position is that plaintiff fails to demonstrate a serious medical need (#35, p. 6-7). Defendants state that plaintiff's ailment is not a serious need because his claims of chronic or extreme pain were not corroborated by third-party observations that plaintiff experienced pain while on the LCC yard. *Id.* at 6. Additionally, defendants note that the cyst did not increase in size, leading them to believe that there was no plausible cause of additional pain. *Id.* at 7. NDOC's response to plaintiff's grievance states: "Pain is a subjective symptom and without any physical evidence no reputable doctor will prescribe just on the basis of the complaint" (#42, p. 14). Plaintiff describes his pain as excruciating and likens it to being kicked in the testicles or having his testicle

6

1  crushed in a vice (#47, p. 2). Plaintiff also notes that on June 2, 2008, defendant Scott checked a box
2  on a medical form indicating that plaintiff's condition "significantly affect[s] quality of life" (#36-2,
3  p. 11).

4        The court agrees with NDOC's characterization that pain is subjective and is unwilling to
5  decide that plaintiff's testicular mass is not a serious medical need without additional information.
6  If plaintiff accurately describes his condition, his pain certainly rises to the level of chronic and
7  substantial pain indicative of a serious medical condition.  Further, defendant Scott noted that
8  plaintiff's pain impacts his quality of life, which may equate to significant impact on daily activities.
9  *See Lopez*, 203 F.3d at 1131.  Therefore, the court declines to grant summary judgment on the
10 grounds that plaintiff did not have a serious medical need, as plaintiff's level of pain and the extent
11 of the impact of his condition remain open questions.

12       Defendants then argue that if the court finds that an epididymal cyst is a serious need,
13 plaintiff fails to demonstrate any evidence constituting deliberate indifference to plaintiff's serious
14 medical needs.  The court agrees.   Defendant Scott conducted an examination of plaintiff's left
15 testicle, determined that plaintiff displayed symptoms of a hydrocele that did not require the care of
16 a specialist, and provided plaintiff with a referral to defendant Gedney for a second opinion.  Upon
17 defendant Gedney's examination she determined that plaintiff had an epididymal cyst, consistent
18 with his previous diagnosis in 2004.  Further, she determined that the cyst had not increased in size,
19 making further treatment unnecessary. Defendant Scott again examined plaintiff's left testicle and,
20 consistent with plaintiff's generalized complaints of pain, prescribed pain relievers. An independent
21 evaluation of plaintiff's medical files by Dr. Marsha Jones, a senior physician at NNCC, confirms
22 that plaintiff's medical care was appropriate and notes that plaintiff's "cyst is monitored by medical
23 staff and he is given medication if any when appropriate" (#48, p.10).

24       Plaintiff's complaint arises from the fact that he received two different diagnoses and that
25 defendants did not allow him to see a specialist.  However, differing diagnoses do not evidence
26 deliberate indifference unless plaintiff can show that defendants' treatment protocols were
27 "medically unacceptable." *Jackson*, 90 F.3d at 332. Plaintiff's claim that any layperson would know
28 that treatment by a specialist is indicated when someone has a testicular lump is not persuasive.

7

1  Defendants independently examined plaintiff and both determined that treatment beyond pain relief
2  was not necessary. This conclusion is supported by the Mayo Clinic's description of epididymal
3  cysts provided by defendants and Dr. Marsh's evaluation of plaintiff's medical files.

4  Plaintiff's difference of medical opinion is not enough to prove deliberate indifference. *See*
5  *Franklin*, 662 F.2d at 1344. Plaintiff failed to allege facts that defendants disregarded his medical
6  needs. Rather, the facts prove that plaintiff received medical evaluation of his testicle on three
7  separate occasions and pain medication. Therefore, the court grants summary judgment for
8  defendants on plaintiff's claim of deliberate indifference to serious medical needs.

9  **2.   Eleventh Amendment Immunity**

10  The Eleventh Amendment states: "The Judicial power of the United States shall not be
11  construed to extend to any suit . . . against one of the United States by Citizens of another State."
12  U.S. Const. amend XI. The Supreme Court has held that a suit against a state official in his or her
13  official capacity is not suit against that official, but rather a suit against the official's office;
14  therefore, an official acting in his or her official capacity is not a "person" under section 1983. *Will*
15  *v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Since the state and its officials are not
16  considered "persons" within the meaning of section 1983, "they cannot be held liable under the
17  statute for money damages." *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir.
18  2003).

19  In his complaint, plaintiff names defendants in their official and individual capacities (#5).
20  Plaintiff requests injunctive relief allowing him to see at least one specialist and compensatory,
21  nominal, and punitive damages. *Id.* at 7. As the court recommends summary judgment on the
22  Eighth Amendment claim, plaintiff's request for injunctive relief is moot. Further, it is clear that
23  defendants cannot be sued in their official capacities for money damages. *Bank of Lake Tahoe*, 318
24  F.3d at 918. Therefore, the court recommends summary judgment for defendants in their official
25  capacities for all monetary claims for relief.[7]

---

[7] Because plaintiff has not demonstrated that defendants acted with deliberate indifference to his serious medical needs, the court need not reach issues of qualified immunity.

### 3. Supervisory Liability

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). When the named defendant is a supervisor, the causal link between the defendant and the claimed constitutional violation must be established. Thus, to maintain his claim against these defendants on the theory of supervisory liability, "the plaintiff must set forth some evidence that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotations omitted).

Defendants argue that defendant Bannister did not participate in the provision of medical care and thus cannot be found liable. Specifically, defendant Bannister asserts that he merely denied plaintiff's grievance and that such an act should not incur liability. Plaintiff notes that the prison medical staff is under the direct control of defendant Bannister and that he knew of plaintiff's complaints and still denied him treatment. Plaintiff does not allege that defendant Barrister participated in his medical appointments, conducted any examinations of plaintiff, or consulted with other defendants regarding plaintiff's medical condition or care. Absent such facts, defendant Bannister cannot be held liable under a theory of supervisory liability. Therefore, summary judgment for defendant Bannister is proper.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated that defendants were deliberately indifferent to plaintiff's serious medical needs. As such, the court recommends that defendants' motion for summary judgment (#35) on the issue of Eighth Amendment cruel and unusual punishment be **GRANTED**. Further, as plaintiff cannot recover monetary damages from defendants sued in their official capacities, the court recommends summary judgment for all defendants named in their official capacities be **GRANTED**. Additionally, defendant Bannister cannot be held liable for Eighth Amendment claims under a theory

of respondeat superior for his limited participation in the grievance process so the court recommends that summary judgment for defendant Bannister be **GRANTED**. Therefore, the court recommends that defendants' motion for summary judgment be **GRANTED** in its entirety.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment(#35) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's filing entitled, "Judicial Notice of False and Fraudulent Information for the Sole Purpose of Defrauding the Court" (#49) be **STRICKEN**.

**DATED**: November 16, 2010.

_____
**UNITED STATES MAGISTRATE JUDGE**